NARCISO TORRES ET AL, Plaintiffs and Appellees, v. FÉLIX GONZÁLEZ RIVERA, Defendant and Appellant.

No. 8846. Argued April 13, 1944.—Decided July 13, 1944.

*Leopoldo Tormes García* for appellant. *Erasto Arjona Siaca* for appellees.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

The appellees filed a complaint in the municipal court claiming payment for certain extra hours that they allege they worked during the term of their employment as bus drivers for the defendant.

As regards Narciso Torres, it was alleged in the complaint that he worked from August 28, 1938, until August 28, 1941, that is, one thousand and ninety-five days, and that during those days he worked 4,108 extra hours; that his salary was $12.50 weekly, which is equivalent to $1.78 daily and which, calculated upon the basis of an eight-hour day ·of work, amounts to twenty-two cents per hour; and that the value of the 4,108 hours calculated at double compensation amounts to $1,807.52.

As regards Rafael Vázquez, it was alleged in the complaint that he was employed from May 8, 1939 until May 8, 1942, that is, for one thousand and ninety-five days, during which time he worked seven hundred and two extra hours, and that his salary of $12.50 weekly amounts to $1.78 daily for a work-day of eight hours, that is, twenty-two cents per hour; and that the seven hundred and two extra hours calculated at double compensation amount to $308.88.

Upon those allegations, Narciso Torres and Rafael Vázquez asked that judgment be entered in their favor for $1,807.52 and $308.88, respectively.

In this appeal, the appellant raises the question that the complaint does not state a cause of action in favor of the appellees. He argues, as was done in the case of *Alcalá* v. *Ponce Star Line, Inc., ante,* page 825, decided on the 3rd of this instant July, that the work done by the plantiffs is not comprised within the provisions of Act No. 49 of August 7, 1935 (Spec. Sess. Laws, p. 538). This contention was there decided adversely to the appellant and we have nothing to add to what we said therein.

We shall now consider the case on the merits.

The evidence is conflicting, since while Narciso Torres, one of the plaintiffs, assures us that he worked twelve hours daily during the period of his employment, and Rafael Vázquez, the other plaintiff, claims one extra hour worked during the same period, the defendant Félix Gonzá-

les states that they, the same as his other employees, only worked eight hours daily, for which they received $12.50 weekly, equivalent to $1.78 daily; and that although it is true that the plaintiff Narciso Torres during the period of the *zafra* made, every other week, a daily trip, at one o'clock in the morning, to the Central Mercedita, which trip took three quarters of an hour, during those weeks he was paid, by mutual agreement, $2 extra weekly.

In deciding the conflict in the evidence in favor of the plaintiffs and in giving full credit to their testimony, the judge said the following:

"As the defendant denied in his answer and tried to show, and introduced the testimony of coemployees to the effect that the plaintiffs worked only 8 hours a day, it is evident that his theory is that the amount of $1.78 paid per day to Narciso Torres and Rafael Vázquez was for an eight hour work-day. It having been proved to this court that said plaintiffs worked hours in excess of the 8 regular hours, the obvious conclusion is that the extra hours have not been paid by the defendant to the plaintiffs and all that must be now done is to fix its amount in accordance with the doctrine established by the Supreme Court in the said case of *Cardona* v. *District court, supra,* that is, at the rate of double compensation for the ninth hour and at single rate for the others in excess of that.

"The corresponding arithmetical operation thus made, the result is that the defendant owes to the plaintiff Narciso Torres the amount of $481.80 for the total amount of the ninth hours worked and not paid, calculating the same at the double rate of $.44 per hour, and $722.70 for the remaining extra hours in excess of the ninth hour calculating them at the single rate of $.22, which means that the defendant owes to plaintiff Narciso Torres the total amount of $1,204.50.

"As regards the plaintiff Rafael Vázquez, the defendant owes him $481.80 for the total of the ninth hours worked and not paid, calculating them at the double rate of $.44 per hour."

Did the court err in weighing the evidence?

On one side we have the testimony of the plaintiffs and on the other that of the defendant, who are the persons in the best position to know the truth as to what took place.

We shall start by setting forth the manner in which, according to the plaintiffs, the contract of employment was initiated. Narciso Torres testified on cross-examination that one time he asked Félix González for work and that the latter told him he had no work to give him, but that when there should be an opportunity he would call him; that later he sent for him to start working without agreeing as to the salary and hours of work and that when the week was over [notwithstanding that he started to work on Tuesday] he paid him $12.50; that next week [although he worked the whole week] he also paid him $12.50 and this went on during the three years of his employment. When he was asked by counsel for the defendant, if he was satisfied with that salary and if on any occasion he had demanded from González something that the latter owed him for his work he said: ''Well, I was working for twelve and a half dollars. . . I did not demand anything. I did not have in my mind that he owed me anything.''

And Rafael Vázquez, referring to the manner in which his contract of employment was initiated, stated: ''I came driving a bus from the Playa, and he told me [the defendant] if I would like to work for him and I told him that I was willing to. Then I started to work for him and when I finished working on Sunday he gave me twelve and a half dollars.'' The attorney for the defendant asked him: ''Then he did not tell you the work that you had to do for that amount?'' and he answered: ''I started to work at five o'clock in the morning, when there were only two buses, and I quit at twelve o'clock at night, with half an hour for lunch and half an hour for supper.''

Said witness testified that this happened in 1929. Contrast the manner in which this contract of labor was initiated with the manner in which that of Narciso Torres was initiated on August 28, 1938, and it will be observed that, notwithstanding the fact that nine years elapsed within the

commencement of one and the other, in both cases the rare invitation to work as driver for a bus enterprise was followed, and that despite the fact that there was not a rate established for this kind of work the employer did not tell the worker how much he was going to be paid and how much time he should work, and, what is still more unusual, the employee likewise did not ask him in order to determine whether the employer's proposition was acceptable. Then, at the end of the week, despite the excessive work that the plaintiffs claim to have done, the employer hands them the amount of $12.50 and they receive it quietly, without protest or investigation of any sort.[1]

We shall now see defendant's version of the manner in which the work contract of defendant Vázquez was commenced:

"Q. Rafael Vázquez worked with you, as what?—A. As driver.
"Q. Of what?—A. Of one of my buses.
"  *     *     *     *     *     *     *

"Q. . . . How did you agree that that work was to be done?— A. That bus, as it worked for an average of fourteen to fifteen hours, needs two drivers, and I obtained two drivers, that is, Carlos Febles, who started to work with me in the year 1926, and Vázquez.

"Q. Then, as regards the hours of work and the wages that Mr. Vázquez would earn, what was established?—A. I talked to both of them. When I went to talk to them I asked them if they would like to work for me and they said that they would. I paid them twelve and a half dollars weekly at the rate of one dollar and seventy-eight cents daily.

"Q. And as to the time to be worked, how was it established?— A. The bus was worked for fourteen hours, and one alone can not work fourteen hours.

"Q. How did you establish the periods?—A. I had two drivers.

And referring to the contract with Narciso Torres, he testified:

---

[1] It is almost inconceivable that, after the workmen in Puerto Rico have been preached to for forty years as to their rights regarding their work, a driver for a bus enterprise in the city of Ponce should work twelve hours per day for three consecutive years without the slightest protest.

"Atty. Tormes: Q. . . . . Do you know Narciso Torres?—A. Yes, sir.

"Q. What work did he do for you?—A. He was a driver.

"Q. Explain the contract of work: Which where the conditions, terms, wages, etc.? Explain it.—A. When I knew Narciso, he came to look for work and I told him to bring the card from the Public Service Commission. Then he came in as a substitute, not as a driver.

"Q. Explain your contract of work with Narciso Torres from August 1938 to August 1942.—A. Narciso Torres as a substitute earned ten dollars weekly, and when he was a regular driver he earned twelve and a half dollars.

"Q. For what time was that?—A. Eight hours daily.

"  *       *       *       *       *       *       *

"Judge: Q. Let us start over again. Narciso, when did he start? A. At five thirty in the morning, until eight in the morning. At eight o'clock in the morning he finished his work and put the bus in the garage. On the eight-o'clock morning trip he brought the students from the Central Mercedita, and from there, he brought the girls from the distillery, who left from there at half past eleven.

"Atty. Tormes: Q. Until what time?—A. He arrived at Ponce and turned back to the Central Mercedita to bring back the students that he left there. Then he arrived at ten minutes of one and at one o'clock he was in the garage.

"Q. At what time did he start in the afternoon?—A. Afterwards, at three o'clock in the afternoon, he left to take the students that he left near the school and took them to the Central Mercedita, because the students quit at three o'clock. From there he brought laborers. He again goes back to Central Mercedita, to get the people there, who left from there around ten of five or five of five, and as soon as he checks up this group of laborers he takes the bus to the garage.

"A. At what time?—A. About ten after five.

"Q. At what time did he again leave at night?—A. I told him that he had to make a trip at night, at eight o'clock, to Central Mercedita.

"Q. Until what time?—A. Until a quarter of nine.

Taking into account the hours that the plaintiffs allege to have worked, we have on one hand that Rafael Vázquez worked as a driver for the same employer and did the same

kind of work done by Narciso Torres, and while the former worked only one extra hour he received $12.50 weekly, and that Narciso Torres worked not less than twelve hours daily and sometimes fifteen, and sometimes he even made trips to other towns, carrying passengers, without receiving any compensation for such trips, but at the end of the week he received the same amount of $12.50 that for nine hours of daily work was received by Rafael Vázquez. And this salary of $12.50 weekly was received by Torres under these conditions, without the least protest, because, as the witness said, "I did not claim anything from him. I did not have in mind that he owed me anything."

Now we shall consider the matter from the employer's standpoint. Assuming, without accepting it as established, that the selfishness of the employer would lead him to demand and obtain from Narciso Torres twelve hours of daily work for the amount of $1.78, is it not logical that that same selfishness would forbid him from paying Rafael Vázquez the same salary for only nine hours of daily work? The reasonable thing is that he would have demanded from Vázquez the same amount of work as in the case of Narciso Torres, and that if the former refused, he would have dismissed him. He would have had to do so, first because there was no reason why Vázquez for the same amount of money, should not render the same work that Torres did, and, second, because if this discrimination was allowed, Torres, upon learning of it, would have objected. But the situation is that both of them continued working for the defendant for three consecutive years without any protest from Torres because more work was demanded from him than from Vázquez, and without any protest on the part of González because Vázquez did not do the same amount of work as Torres.

The testimony of Félix González is logical and consistent, and it clearly appears from it that his agreement with the plaintiffs was for a day of eight hours at the rate of a $12.50 weekly salary.

Several parts of the testimony of the plaintiffs are absurd and ridiculous. Upon being called as a rebuttal witness to contradict the defendant, who stated that the drivers started to work at five thirty in the morning and not at five o'clock in the morning, Vázquez said:

"There was a matter that Félix González did not know about it. Juan Matos, a driver, wanted to carry more passengers than any other driver. There was a competition as to the first one to leave before five o'clock in the morning; and as he wanted to carry more passengers, there was a competition as to this, and we went out before five o'clock in the morning, when Félix González had not gotten up."

Then the judge asked him: "Then, you did that on your own account?" and he answered: "Yes, sir." Defendant's attorney cross-examined him and asked him: "What interest did Juan Matos have in racing (*regateos*)?" and he answered: "He wanted to show that he carried two hundred passengers himself. That was a pleasure for him." How can it be conceived that these drivers, who were paid a fixed salary, regardless of the number of passengers carried, and who where not inexperienced children, could conceive of the idea of starting to work before five o'clock in the morning just because one of them, without any justification or reason, would start working prior to the time agreed on solely for the empty pleasure of reporting a greater number of passengers carried?

We shall now point out a similar incident in the testimony of Narciso Torres. During the cross-examination, the defendant's attorney showed to the witness, for the purpose of identification, certain checks issued to his order and collected by the witness, among which was one for $25. The witness admitted that the check had been issued to his order by González and that the endorsement was his and that he had collected the amount. When explaining the issuance of the check, he said that Félix González had made a gift to

him. But we should see the explanation given by the employer as to this check. He testified that Narciso Torres had had a fight with a man in the Central Mercedita and that with a ring that Torres wore he cut the other man's face, who proposed to avenge himself. Upon González knowing that, for the purpose of avoiding worse consequences, he told Torres that since that had happened, he did not want him to drive the buses to the Central and proposed to him to work in the shop, earning the same salary. Torres did not accept and preferred to quit his job, and then the defendant, in compliance with the law, handed him a check for $25, the amount of two weeks of work.

Is it not evident that the trial judge has committed manifest error in giving full credit to these witnesses whose testimony has been so logically contradicted by the defendant?

The doctrine that our cases have introduced in this jurisdiction, to the effect that this court will respect and accept the findings of fact made by the lower court in weighing the evidence, confers a broad power which at the same time imposes a very serious and delicate responsibility on the district courts as regards the administration of justice. Conscious of this responsibility, the district judge should contribute with his intelligence, his knowledge of human nature, and his great efforts to the end of extracting the truth from the evidence. This doctrine can be turned, however, into a dangerous weapon. If the judges fulfill their duties with exactness, it would be a powerful aid in justly deciding controversies, but if on the contrary, they do not realize their delicate mission, the doctrine may be turned into an instrumentality of oppression and injustice. In the exercise of his discretion in weighing the evidence, the judge should act with complete independence and having only in mind the thought of rendering to every one his due. We have repeatedly said that laws regarding social justice, like the one

involved herein, should be liberally construed in order to effectuate the lofty purpose sought by the lawmaker.[2] But this does not imply that when the evidence is weighed in these cases full credit should be given to the testimony of the laborer when the sorrounding circumstances do not warrant it. It should not be forgotten that justice is owed to the laborer, as it is also owed to the employer. "Well-established virtue is Justice, as the old learned men said, which always lives in the will of the men, and which gives and accords to each one his right equally." Law I, Title I, Third Partida.

As we are convinced that the trial judge gave undue credit to the testimony of the plaintiffs, committing therefor manifest error in the weighing of the evidence, which shows that the contract of work between plaintiffs and defendant was for eight hours daily, and that they, in fact, worked eight hours, and did not work any extra hours, and that they received payment for their work,[3] the judgment appealed from must be reversed and another rendered instead dismissing the complaint.

---

[2] *Montaner, Manager* v. *Industrial Commission*, 54 P.R.R. 686, 691.

[3] From the testimony of the defendant it appears that Torres during the *zafra* worked every other week three quarters of an hour extra at night, receiving two dollars extra compensation during the weeks when he did this extra work. But from the record no evidence appears which can be taken as a basis to estimate what the employer might owe him, and therefore, we are precluded from making any pronouncement as to this matter.